Filed 5/22/14

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

CHERRITY WHEATHERFORD,

     Plaintiff and Appellant,

v.

CITY OF SAN RAFAEL et al.,

     Defendants and Respondents.

A138949

(Marin County
Super. Ct. No. CIV1300112)

Plaintiff Cherrity Wheatherford filed a complaint challenging the enforcement practices of defendants the City of San Rafael and the County of Marin with respect to the impoundment of vehicles. She claimed she had standing to bring the action as a resident taxpayer. However, she conceded that she had not paid any property taxes. The trial court entered a stipulated judgment of dismissal. We agree with existing appellate decisions that hold payment of an assessed property tax is required in order for a party to have standing to pursue a taxpayer action. Accordingly, we affirm the judgment.

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

On January 9, 2013, plaintiff filed a complaint for declaratory and injunctive relief. In the complaint, she alleged she had taxpayer standing under Code of Civil Procedure section 526a (section 526a) because she had paid sales tax, gasoline tax, and water and sewage fees in the City of San Rafael and the County of Marin. She admitted she had not paid property taxes, but asserted she nevertheless had standing under *Tobe v. City of Santa Ana* (1995) 9 Cal.4th 1069 (*Tobe*). The complaint challenges the

defendants' policies and practices related to the impoundment of vehicles under Vehicle Code section 14602.6. [1]

On April 22, 2013, the trial court filed a stipulated order and judgment of dismissal. In the order, plaintiff admitted appellate courts have twice held that payment of property taxes is required for taxpayer standing under section 526a. (See *Torres v. City of Yorba Linda* (1993) 13 Cal.App.4th 1035 (*Torres*); *Cornelius v. Los Angeles County etc. Authority* (1996) 49 Cal.App.4th 1761 (*Cornelius*).) She also conceded her argument that the property tax requirement is an unconstitutional wealth-based classification is precluded under *Torres, supra,* 13 Cal.App.4th 1035, 1048, fn. 7. She now challenges *Cornelius* and *Torres* in this appeal.

## DISCUSSION

### I. *Standard of Review*

Interpretation of a statute presents questions of law for the court to decide, and is reviewed de novo. (*Ramirez v. Yosemite Water Co.* (1999) 20 Cal.4th 785, 794; *Fredenburg v. City of Fremont* (2004) 119 Cal.App.4th 408, 419; Evid. Code, § 310, subd. (a).) Plaintiff raises issues regarding the interpretation and application of section 526a and whether it may be read in a manner to afford her taxpayer standing. The de novo standard of review, therefore, applies in this case.

### II. *Taxpayer Standing Under Section 526a*

Section 526a provides, in relevant part: "An action to obtain a judgment, restraining and preventing any illegal expenditure of, waste of, or injury to, the estate,

---

[1] Vehicle Code section 14602.6, subdivision (a)(1) provides, in part: "Whenever a peace officer determines that a person was driving a vehicle while his or her driving privilege was suspended or revoked, driving a vehicle while his or her driving privilege is restricted pursuant to Section 13352 or 23575 and the vehicle is not equipped with a functioning, certified interlock device, or driving a vehicle without ever having been issued a driver's license, the peace officer may either immediately arrest that person and cause the removal and seizure of that vehicle or, if the vehicle is involved in a traffic collision, cause the removal and seizure of the vehicle without the necessity of arresting the person . . . . A vehicle so impounded shall be impounded for 30 days."

funds, or other property of a county, town, city or city and county of the state, may be maintained against any officer thereof, or any agent, or other person, acting in its behalf, either by a citizen resident therein . . . *who is assessed for and is liable to pay, or, within one year before the commencement of the action, has paid, a tax therein*." (Italics added.) The fundamental purpose of this statute is to " 'enable a large body of the citizenry to challenge governmental action which would otherwise go unchallenged in the courts because of the standing requirement.' " (*Blair v. Pitchess* (1971) 5 Cal.3d 258, 267-268 (*Blair*).)

In *Torres, supra,* the Fourth District Court of Appeal held that proof of payment of real property tax is required by section 526a; payment of sales tax will not suffice. (13 Cal.App.4th 1035, 1046-1047.) The plaintiffs in *Torres* had filed a taxpayer action challenging the validity of a proposed redevelopment project by the City of Yorba Linda. The plaintiffs did not reside or own real property in that city. Rather, the complaint alleged both plaintiffs currently lived in Anaheim, but were interested in moving to Yorba Linda if they could find decent, safe, sanitary and affordable housing. Each plaintiff paid a *sales tax* to the City of Yorba Linda within one year before filing the action. (*Id.* at p. 1039.) In rejecting the plaintiffs' claim of taxpayer standing, the appellate court looked to the language of section 526a granting standing to one "who is assessed for and is liable to pay, or within one year before the commencement of the action, has paid, a tax therein." The court read this language as requiring proof of payment of an assessed tax. The court found the nonresident plaintiffs lacked standing because they had paid only sales tax, which is technically assessed against the retailer, not the consumer, though as a practical matter the retailer simply passes the sales tax on to the consumer, who pays it at the time of purchase. (*Id*. at pp. 1047-1048.)[2]

---

[2] Division Five of this appellate district recently endorsed the holding of *Torres* in *Reynolds v. City of Calistoga* (2014) 223 Cal.App.4th 865, 872-873.

3

Two years later, our Supreme Court decided *Tobe, supra,* holding, in part, that two taxpayer plaintiffs who were homeless—and thus necessarily did not pay real property taxes—had taxpayer standing under section 526a. (9 Cal.4th 1069, 1086.) In *Tobe,* the plaintiffs, some of whom were homeless, brought an action to bar the enforcement of a Santa Ana ordinance that banned camping and storage of personal effects in public areas throughout the city. (*Id.* at pp. 1081-1082.) In the course of reaching its decision, the Court held that regardless of whether the plaintiffs had a beneficial interest in the writ action, they did have standing to bring the petition as section 526a taxpayers. (*Id.* at p. 1086.) There is no indication, however, that the Court considered the issue of what taxes plaintiffs had paid to enjoy this standing.[3] The main focus of the case was geared toward separate constitutional concerns. As plaintiff acknowledges, cases are not precedent for issues not considered and decided. (*Camarillo v. Vaage* (2003) 105 Cal.App.4th 552, 565.)[4]

One year after *Tobe* was decided, the Second District Court of Appeal cited *Torres* as stating the correct rule and held that proof of payment of real property tax is required by section 526a; payment of sales, gasoline, and income taxes will not suffice. (*Cornelius, supra,* 49 Cal.App.4th 1761 at pp. 1777-1776.) In *Cornelius,* a nonresident plaintiff brought suit against the Los Angeles County Metropolitan Transportation Authority (MTA) challenging an affirmative action program it had implemented as a required condition of receiving federal funds. The plaintiff did not reside in the county of

---

[3] Similarly, in *Arrieta v. Mahon* (1982) 31 Cal.3d 381, plaintiffs were a group of tenants who brought a section 526a taxpayer's action to challenge the county marshal's policy of evicting all occupants when enforcing a writ of execution after an unlawful detainer judgment, regardless of whether the occupants were actually named in the writ. (*Id.* at p. 385.) The Court concluded the plaintiffs had standing to bring the suit under section 526a. (*Id.* at p. 387.) However, as in *Tobe,* the Court did not discuss the issue of what specific taxes plaintiffs had paid that served to grant them standing.

[4] Plaintiff's opening brief discusses many other cases that suffer from this same flaw. We need not address them here.

Los Angeles or own real property therein. Rather, he worked for a company in Hollywood that had allegedly lost out on a bid in that county due to an affirmative action program. (*Id.* at pp. 1765, 1774.) He claimed he had the right to sue based on his payment of sales and gasoline taxes within the county, as well as his payment of income taxes to the state. (*Id.* at p. 1774.) In rejecting the claim of taxpayer standing, the appellate court first found that real property taxes are assessed on the property owner directly and therefore satisfy the language of section 526a. As the plaintiff had not paid real property taxes, he could not claim taxpayer standing on that basis. (*Id.* at pp. 1775-1776.) *Cornelius* does not mention the *Tobe* opinion.

Below, the parties agreed that under the rule of stare decisis, the trial court here was constrained to follow *Cornelius* because it squarely addresses the issue of property tax payment and it post-dates the Supreme Court's decision in *Tobe*. On appeal, plaintiff asks us to reject *Cornelius* and *Torres* in favor of *Tobe* and other cases that have, according to her, construed section 526a broadly "to achieve its remedial purpose." She asks us to hold that payment of *any* form of tax suffices for standing under section 526a.

## III. *Plaintiff Lacks Standing*

### A. *Plain Language of Section 526a*

Plaintiff claims the plain language of section 526a reveals that payment of any tax is sufficient to confer taxpayer standing, including payment of fees for services such as water and sewage.[5] As noted above, that section allows a "citizen resident" to bring a lawsuit if the individual "is assessed for and is liable to pay, or, within one year before the commencement of the action, has paid, a tax therein. . . ." Plaintiff first claims the statute is written in the disjunctive, asserting the word "or" separates persons who have been assessed for and are liable to pay a tax from those who have merely "paid a tax" in

---

[5] Fees and taxes are not the same. (See *Northwest Energetic Services, LLC v. California Franchise Tax Board* (2008) 159 Cal.App.4th 841, 854 [fees, unlike taxes, are not compulsory and are intended to compensate for services or benefits provided by the government].)

the relevant jurisdiction. As to the latter class of taxpayers, she asserts an assessment is not required. While she claims the "overall meaning" of the statute "is made difficult by the manner in which the words are parsed and separated by commas," in reality it is her own interpretation that is strained. Plainly, the word "or" is intended to provide an alternative to the clause "is liable to pay." Thus, the statute gives standing to two classes of persons who have been assessed for taxes: (1) those who are liable to pay an assessed tax but who have not yet paid, and (2) those who paid an assessed tax within one year before the filing of the lawsuit. Unlike plaintiff, we see nothing in this interpretation that would lead to any "absurd results."

### B. *Legislative Intent*

Plaintiff asserts legislative intent supports her broad interpretation of section 526a. The statute was enacted in 1909, and plaintiff does not direct our attention to any actual legislative history. Instead, she points to appellate decisions that have described the statute as providing "a general citizen remedy for controlling illegal governmental activity" (*White v. Davis* (1975) 13 Cal.3d 757, 763), designed to "enable a large body of the citizenry to challenge governmental action" (*Blair, supra,* 5 Cal.3d 258, 267-268) and providing a broad basis of relief. (See *Van Atta v. Scott* (1980) 27 Cal.3d 424, 447-448.)

Courts need not rely on legislative intent when a statute is clear on its face. (*Greb v. Diamond Internat. Corp.* (2013) 56 Cal.4th 243, 256.) In any event, plaintiff's contentions are not persuasive. Her argument is based on her view that the "legislative intent of section 526a would be undermined if the statute is interpreted to afford standing only to a select sub-group of the most wealthy Californians who are fortunate enough to own real property in this state and pay taxes thereon."[6] While it is true that persons with

---

[6] Standing under section 526a is not limited to real property owners. (See *Santa Barbara County Coalition Against Automobile Subsidies v. Santa Barbara County Assn. of Governments* (2008) 167 Cal.App.4th 1229, 1236, holding that a retailer that paid sales taxes in the jurisdiction sufficiently established standing under section 526a because it "established liability to pay a tax assessed by Santa Barbara County." Here, defendants note section 526a applies to individuals and business owners on whom a governmental

6

limited financial resources will find it difficult to purchase homes in today's market, it does not follow that home ownership correlates with an individual's wealth. Many wealthy people do not own homes, preferring instead to rent. Additionally, it is not a given that all lower income people are renters, as they may have purchased a home many years ago when their incomes were higher or may have inherited their homes from family members. Thus, plaintiff's premise is flawed.

## C. *Constitutionality*

Plaintiff uses a similar argument to suggest section 526a violates principles of equal protection. She asserts an interpretation of the statute that requires a litigant to have paid assessed property taxes in order to have standing to sue creates a "wealth-based classification," thereby raising constitutional concerns subject to strict scrutiny. Again, the correlation between wealth and home ownership is not as clear as plaintiff suggests. Further, as she acknowledges, the equal protection argument was rejected by the court of appeal in *Torres*. In *Torres,* the appellate court stated in a footnote: "Plaintiffs also claim that denying standing to them under [section] 526a violates their constitutional right to equal protection of the law. The argument is without merit. The case law clearly establishes plaintiffs are not similarly situated with others determined to have standing under these circumstances." (*Torres, supra,* 13 Cal.App.4th at p. 1048, fn. 7.) Here, plaintiff asserts she is similarly situated to other taxpayers who pay all of the same taxes as she does, but who also happen to pay property taxes. For purposes of this appeal, we assume, without deciding, that plaintiff is similarly situated to taxpayers who have been accorded standing under section 526a.

The equal protection clause " 'compel[s] recognition of the proposition that persons similarly situated with respect to the legitimate purpose of the law receive like treatment.' " (*Darces v. Woods* (1984) 35 Cal.3d 871, 885.) A state cannot "deny to any

entity directly assesses a tax. Such individuals would include, but would not necessarily consist solely of, real property owners.

person within its jurisdiction the equal protection of the laws" under the Fourteenth Amendment of the federal Constitution. (U.S. Const., 14th Amend., § 1.) Similarly, the state Constitution provides that a person may not be "denied equal protection of the laws." (Cal. Const., art. I, § 7.)

Plaintiff argues that a strict scrutiny constitutional analysis applies. We disagree. "Classifications that disadvantage a 'suspect class' or impinge upon the exercise of a 'fundamental right' are subject to strict scrutiny; this requires the state to demonstrate that its classification 'has been precisely tailored to serve a compelling governmental interest.' [Citations.]" (*Jensen v. Franchise Tax Bd*. (2009) 178 Cal.App.4th 426, 434, fn. omitted (*Jensen*).) To the extent plaintiff claims section 526a creates a distinction based on wealth, we note courts have held that classifications based on wealth do not merit strict scrutiny. In *Jensen,* the court of appeal stated: "Suspect classifications include race, gender, national origin, and alienage. Wealth generally confers benefits, and does not require the special protections afforded to suspect classes." (178 Cal.App.4th 426 at p. 434 [wealthy taxpayers unsuccessfully maintained wealth is a suspect classification and the tax imposed by Proposition 63 affects only " 'the class of "wealthy" persons.' "]; see also *Maher v. Roe* (1977) 432 U.S. 464, 471 ["[T]his Court has never held that financial need alone identifies a suspect class for purposes of equal protection analysis. [Citations]".)

Plaintiff relies on *Serrano v. Priest* (1971) 5 Cal.3d 584 (*Serrano*), in which the Supreme Court struck down a public school financing system based on local real property assessed valuations, concluding an educational system that produces disparities of opportunity based upon district wealth violates principles of equal protection. (*Id.* at pp. 598-600.) In *Serrano,* the Court afforded constitutional protection to students from poor districts because state law diminished that group's fundamental right to an education equal to that of wealthy districts. The Court held that the method of financing schools through ad valorem property taxes was violative of equal protection as it discriminated on

8

the basis of wealth.  (*Id.* at pp. 614-615.)   Thus, the issue was that the financing system itself *created* an inequality affecting a fundamental right, not that poor people are, as such, members of a protected class.

We also note the cases cited in *Serrano* relate to unconstitutional treatment of indigents, not discrimination against persons who may not have enough money to buy a house.  (*Serrano, supra,* 5 Cal.3d at pp. 597-598; see, e.g., *Harper v. Virginia Bd. of Elections* (1966) 383 U.S. 663 [poll tax]; *Tate v. Short* (1971) 401 U.S. 395 [indigent defendant cannot be sent to jail for inability to pay a fine imposed for traffic violations]; *Douglas v. California* (1963) 372 U.S. 353 [indigent defendant has a right to counsel on appeal]; *Smith v. Bennett* (1961) 365 U.S. 708 [indigent defendant has a right to petition for habeas corpus despite his inability to pay a filing fee].)  *Serrano* is inapposite because it does not purport to identify persons who cannot afford to own real property as a protected class.

Thus, the rational basis test applies.  A statute "should be sustained if we find that its classification is rationally related to achievement of a legitimate state purpose." (*Western & Southern Life Ins. Co. v. State Bd. of Equalization* (1981) 451 U.S. 648, 657.) "In a rational basis analysis, any conceivable state purpose or policy may be considered by the courts.  [Citations.]  The state 'has no obligation to produce evidence to sustain the rationality of a statutory classification,' which ' "may be based on rational speculation unsupported by evidence or empirical data." '  [Citation.]  The party challenging the constitutionality of a state law must ' "negative every conceivable basis which might support it." '  [Citation.]  'A classification does not fail rational-basis review because it " 'is not made with mathematical nicety or because in practice it results in some inequality.' " '  [Citation.]  The burden of demonstrating the invalidity of a challenged classification 'rests squarely upon the party who assails it.'  [Citation.]"  (*Jensen, supra,* 178 Cal.App.4th at p. 436, italics omitted.)

Here, plaintiff does not contend section 526a serves no conceivable state purpose. She merely argues that the statute, as construed under *Torres* and *Cornelius,* discriminates against some taxpayers on account of the fact that they do not pay property taxes. Courts have noted that it is not irrational to limit standing in taxpayer lawsuits. For example, the court in *Cornelius* stated it did not believe "it would be sound public policy to permit the haphazard initiation of lawsuits against local public agencies based only on the payment of state income taxes." (*Cornelius, supra,* 49 Cal.App.4th 1761 at pp. 1778-1779.) We also see a rational purpose in limiting taxpayer standing to persons who pay property tax in the jurisdiction corresponding to the public entity defendant. Individuals who have directly paid a tax to the government have obtained "a sufficiently personal interest in the illegal expenditure of funds by county officials to become dedicated adversaries." (*Blair, supra,* 5 Cal.3d at p. 270.) Additionally, given the apparent widespread nature of defendants' vehicle impoundment practices, this is not a case in which taxpayer standing must be construed liberally to allow a challenge to governmental action which would otherwise go unchallenged because of the stricter requirement of standing imposed by case law. (See *Blair, supra,* 5 Cal.3d at pp. 267-268.) Presumably there are many individuals whose vehicles have been impounded by defendants, and who therefore can fulfill the case law requirement of actual injury.[7] Alternatively, there are many homeowners who pay taxes directly to defendants and who have standing to raise the claims plaintiff seeks to pursue. We thus agree with defendants that plaintiff lacks standing to bring the instant action.

---

[7] " 'The issue of whether a party has standing focuses on the plaintiff, not the issues he or she seeks to have determined.' [Citation.] 'A person who invokes the judicial process lacks standing if he, or those whom he properly represents, "does not have a real interest in the ultimate adjudication because [he] has neither suffered nor is about to suffer any injury of sufficient magnitude reasonably to assure that all of the relevant facts and issues will be adequately presented." [Citation.]' [Citations.] 'California decisions . . . generally require a plaintiff to have a personal interest in the litigation's outcome.' [Citation.]" (*Blumhorst v. Jewish Family Services of Los Angeles* (2005) 126 Cal.App.4th 993, 1001.)

## DISPOSITION

The judgment is affirmed.

 

                               _____

                               Dondero, J.

We concur:

_____
Margulies, Acting P.J.

_____
Becton, J.[*]

---

[*] Judge of the Contra Costa County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

Trial Court:                                           Marin County Superior Court

Trial Judge:                                          Hon. Roy Chernus

Counsel for Plaintiff and Appellant:        Mark T. Clausen

Counsel for Defendants and Respondents:    Bertrand, Fox & Elliot:
  Thomas F. Bertrand,
    and
  Richard W. Osman

                                                    Marin County Counsel:
  Renee G. Brewer,
    and
  Valorie R. Boughey